# Supreme Court of Texas

### No. 24-0778

### In the Estate of J. Hugh Wheatfall, Deceased

### On Petition for Review from the
### Court of Appeals for the First District of Texas

**PER CURIAM**

In this probate proceeding, the trial court considered an application for letters of administration, filed by the decedent's son, along with an application to probate a will allegedly executed by the decedent, filed by the decedent's granddaughter. Before the trial court ruled on those competing applications, the son filed objections to the probate of the will. We are asked whether the trial court's subsequent order admitting the will to probate and denying the son's application for letters of administration was a final, appealable judgment disposing of the son's objections even though the order expressly declined to rule on those objections. The court of appeals held that the order was final and the son did not timely appeal, depriving the appellate court of jurisdiction. We disagree. On its face, the order did not unequivocally dispose of all pending issues when it was signed, and the record confirms that it was not intended to do so. Accordingly, we reverse the court of

appeals' judgment and remand to that court to consider the merits of the appeal.

## I

Hugh Wheatfall died in 2018. On February 28, 2019, Isaiah Wheatfall filed an application for letters of administration of Hugh's estate, alleging that Hugh was Isaiah's father, that Hugh died without a valid will, and that Isaiah was the sole surviving heir. About a week later, Theresa DeBose filed an application to admit a 2009 will—which Hugh allegedly executed—to probate and requested issuance of letters testamentary. DeBose identified herself as Hugh's granddaughter, alleged that the will was "valid" and "never revoked," and attached a copy of the will.

As the Estates Code requires, the trial court "hear[d] both applications together" for the purpose of determining "whether the will should be admitted to probate or whether the decedent died intestate." TEX. EST. CODE § 256.101(a). At a June 2019 hearing, the court heard testimony from a subscribing witness to the will as well as an attorney from the firm that assisted Hugh in preparing the will.

On September 5, 2019, before the trial court ruled on the competing applications, Isaiah (hereinafter, Wheatfall) filed a "Contest to the Application for Probate of a Will not Produced in Court" and requested a hearing, alleging that (1) the will was not properly executed, (2) Hugh was not of sound mind when the will was executed, and (3) the will was "made and executed under undue influence." The contest was filed pursuant to Section 55.001 of the Estates Code, which provides that "[a] person interested in an estate may, at any time before the court

2

decides an issue in a proceeding, file written opposition regarding the issue. The person is entitled to process for witnesses and evidence, and to be heard on the opposition, as in other suits." *Id.* § 55.001.

On September 16, 2019, without holding an additional hearing, the trial court signed an order denying Wheatfall's application for letters of administration,[1] admitting the copy of the will to probate, and issuing letters testamentary to DeBose. The trial court found:

- Hugh executed the will "with the formalities and solemnities and under the circumstances required by law to make it a valid Will";

- Hugh was "of sound mind" on the date of execution;

- the will was not revoked; and

- all necessary proof required for probate of the copy of the will had been made.

The trial court also overruled "[a]ll objections to the probate of the Will asserted through September 4, 2019," the day before Wheatfall filed his contest. The court ordered that upon the return of an inventory or affidavit in lieu of an inventory and payment of court costs, the estate "shall be dropped from the Court's active docket."

In January 2020, Wheatfall filed a request for a trial setting on the will contest and for entry of a scheduling order. On March 5, 2021, Wheatfall filed a request for a docket scheduling order but did not obtain a setting. At a status conference one year later,[2] DeBose's counsel

---

[1] Wheatfall also filed an application for determination of heirship and a motion to appoint an attorney ad litem for Hugh's unknown heirs, both of which the trial court denied.

[2] Wheatfall attributes the delays to the COVID-19 pandemic.

3

inquired about "why we're having a scheduling conference" with respect to Wheatfall's September 5, 2019 will contest given that it was filed before the trial court signed the order admitting the will to probate and appointing DeBose as executor. "By the will's admission to probate," counsel asserted, "there is no will contest." The trial court requested briefing on whether it should hear the will contest, stating:

> At least at this point, I will tell you that [at] the point that I rendered my -- that I did admit the will of [sic] probate, it was my belief that the will contest would still be alive. Now that doesn't mean I'm right by any stretch of the imagination but that was certainly my belief.

In the subsequent briefing submitted to the trial court, DeBose objected to the court's setting a hearing on the will contest, asserting that the September 16, 2019 order was a final, appealable judgment that addressed the pending dispute about the validity of the will. She further argued that Wheatfall had failed to timely challenge that order by either appeal or motion for new trial. Wheatfall disagreed, arguing that he had raised new issues in his September 5 filing and that the trial court had overruled only the objections to the probate of the will asserted through September 4.

On November 3, 2022, the trial court rendered an order granting DeBose's objection and dismissing Wheatfall's will contest. A divided court of appeals dismissed Wheatfall's appeal for lack of jurisdiction, holding that the trial court's 2019 order admitting the will to probate was a final, appealable judgment that resolved all issues raised in Wheatfall's contest and that he failed to timely appeal that order. *See* ___ S.W.3d ___, 2024 WL 3608191, at *4-5 (Tex. App.—Houston [1st Dist.] 2024). The dissenting justice concluded that the order expressly

4

did not dispose of Wheatfall's September 5 objections and thus was not an appealable order. *See id.* at *5 (Farris, J., dissenting). The dissent would have reversed the trial court's order dismissing the will contest and remanded to give Wheatfall the opportunity to present evidence and witnesses. *See id.* at *7.

**II**

Probate proceedings are an exception to the general rule that there can be only one final and appealable judgment in a case. *See De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006). In such proceedings, "multiple judgments final for purposes of appeal can be rendered on certain discrete issues." *Id.* (quoting *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192 (Tex. 2001)). We have adopted the following "test" for determining a probate order's appealability:

> If there is an express statute, such as the one for the complete heirship judgment, declaring the phase of the probate proceedings to be final and appealable, that statute controls. Otherwise, if there is a proceeding of which the order in question may logically be considered a part, but one or more pleadings also part of that proceeding raise issues or parties not disposed of, then the probate order is interlocutory.

*Id.* (quoting *Crowson v. Wakeham*, 897 S.W.2d 779, 783 (Tex. 1995)). Here, no statute declares an order admitting a will to probate—like the trial court's 2019 order—to be final and appealable. However, the parties dispute whether the order "dispose[d] of all parties or issues in a particular phase of the proceedings" and was therefore appealable for that reason. *Id.*

As an initial matter, we note that evaluating what constitutes a "particular phase" of a probate proceeding is less straightforward than it appears. For example, the Estates Code seems to envision that the determination of whether to admit a will to probate and the resolution of a will contest constitute distinct phases, as Section 256.204 specifically authorizes an interested person to contest the validity of a will up to two years *after* it has been admitted to probate. *See* TEX. EST. CODE § 256.204. But the Code also includes provisions applicable to a "contest . . . with respect to an application for the probate of a will," indicating that a will contest and a probate application can be part of the same "phase." *Id.* § 256.155; *see also In re Est. of Crapps*, No. 04-21-00300-CV, 2023 WL 378673, at *3 (Tex. App.—San Antonio Jan. 25, 2023, no pet.) (holding that the issues raised in a will contest filed by the decedent's son three weeks after the will was admitted to probate were "logically part of the proceeding to admit [the] will to probate"); *In re Est. of Moreno*, No. 04-19-00600-CV, 2020 WL 3259875, at *1 (Tex. App.—San Antonio June 17, 2020, no pet.) (recognizing that "will contest claims *may* logically be considered a part of the proceeding to admit [the decedent's] will and the codicil to probate and to issue letters testamentary" (emphasis added)). We acknowledge the regrettable lack of clarity in this area of probate law, which warrants the Court's attention in the proper case; however, as discussed below, it does not affect the outcome in this one.

Here, the court of appeals held that Wheatfall's September 5, 2019 filing "was not a new 'contest'" because it was filed *before* the trial court issued its September 16, 2019 order admitting the will to probate.

2024 WL 3608191, at *3. Instead, the court determined, the filing was part and parcel of the dispute about the validity of the will established by the parties' competing applications—Wheatfall's application for letters of administration and DeBose's application to probate the will. *See id.* The court of appeals then concluded that the order resolved all issues raised in Wheatfall's opposition. *See id.* at *4. Specifically, the court held that by finding Hugh executed the will "with the formalities and solemnities and under the circumstances required by law to make it a valid [w]ill," the trial court impliedly found "that [Hugh] had testamentary capacity at the time the will was executed" and "impliedly rejected any claim of undue influence." *Id.* (alteration in original). The court thus concluded that the September 16 order "disposed of all parties and all issues" in a particular phase of the proceedings and "was a final, appealable judgment." *Id.* (citing *De Ayala*, 193 S.W.3d at 578-79).

We need not decide whether the court of appeals correctly concluded that Wheatfall's September 5 filing was part of the same "phase" of the proceeding as the parties' competing applications because, even assuming it was, the trial court's September 16 order simply did not dispose of all issues in that phase. Under the general one-final-judgment rule, a judgment is final if it either "actually disposes of every pending claim and party" or "clearly and unequivocally states that it finally disposes of all claims and all parties." *Lehmann*, 39 S.W.3d at 205. Applying that rule in the probate context, an order is final if it either actually disposes of every party and issue in a particular phase of the proceedings or clearly and unequivocally states that it does so. *See id.* The September 16 order does neither.

7

First, the order does not "express[] an unequivocal intent on its face to finally dispose of" all issues related to the will's validity. *In re Lakeside Resort, JV, LLC*, 689 S.W.3d 916, 924 (Tex. 2024). True, the order contains some indicia of finality. As noted, it states that Hugh executed the will "with the formalities and solemnities and under the circumstances required by law to make it a valid Will," that Hugh was "of sound mind" on the date of execution, that the will was not revoked, and that the estate "shall be dropped from the Court's active docket" upon the return of an inventory and payment of court costs. *See In re Hudson*, 325 S.W.3d 811, 811 (Tex. App.—Dallas 2010, orig. proceeding) (holding that the trial court's order admitting the will to probate, appointing the real party in interest as independent executrix, and stating that no other action shall be had in the probate court other than the return of an inventory, appraisement, and list of claims had "sufficient attributes of finality to confer appellate jurisdiction" (quoting *De Ayala*, 193 S.W.3d at 578)).

However, the order additionally overrules "[a]ll objections to the probate of the Will asserted through September 4, 2019." That statement indicates that objections to the probate of the will asserted *after* September 4, 2019, remained pending. The language thus arguably goes so far as to "affirmatively undermine[] or contradict[] finality." *Lakeside Resort*, 689 S.W.3d at 924. At the very least, it introduces uncertainty as to the court's intent. *See id.* ("To be unequivocal, there must be *no* language pointing against finality.").

Because the order's language is equivocal regarding finality, we look to the record to see if the order actually disposes of all parties and

8

issues in the phase of the probate proceedings at issue. *See Lehmann*, 39 S.W.3d at 200; *see also De Ayala*, 193 S.W.3d at 578. The record confirms that it does not. Indeed, the record affirmatively bears out the order's implication regarding the existence of unaddressed objections raised after September 4 because Wheatfall filed his objections—in a filing he labeled as a will contest—on September 5. Further, the trial judge stated on the record his "belief that the will contest would still be alive" after he signed the order admitting the will to probate.

The court of appeals discounted the order's express, limited ruling on objections asserted through September 4, concluding that the order nevertheless impliedly resolved the substance of the September 5 objections. *See* 2024 WL 3608191, at *4. We disagree. The order is internally inconsistent to some extent. For example, the order contains a finding that Hugh was "of sound mind" on the date the will was executed, but it also left pending Wheatfall's September 5 objections, which included a claim that Hugh was *not* of sound mind on the date of execution. We will not imply finality where the record and the order's express language call finality into question.[3]

Accordingly, we agree with the court of appeals dissent and hold that (1) the trial court's September 16, 2019 order was not final or

---

[3] This is consistent with our general approach of resolving cases on the merits and preserving appellate rights when possible. *See Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) ("[A]ppellate courts should reach the merits of an appeal whenever reasonably possible."); *Verburgt v. Dorner*, 959 S.W.2d 615, 616 (Tex. 1997) ("This Court has never wavered from the principle that appellate courts should not dismiss an appeal for a procedural defect whenever any arguable interpretation of the Rules of Appellate Procedure would preserve the appeal.").

appealable; (2) there was no final order regarding the issues raised in Wheatfall's will contest until the trial court rendered its November 3, 2022 order dismissing the contest; and (3) Wheatfall timely appealed that order. Without hearing oral argument, we grant Wheatfall's petition, reverse the court of appeals' judgment dismissing the appeal for want of jurisdiction, and remand to that court to address the merits of Wheatfall's appeal. TEX. R. APP. P. 59.1.

**OPINION DELIVERED:** February 13, 2026